[No. 12409. In Bank. — August 5, 1889.]

## In the Matter of the Estate of A. E. Rose, Deceased.

Dismissal of Appeal — Res Adjudicata. — The dismissal of an appeal because prematurely taken is not a bar to a second appeal in the same case when a record is made up from which an appeal can be taken.

Estates of Deceased Persons — Order Settling Account of Administrator — Appeal — Final Judgment — Review of Evidence. — An interlocutory order settling the account of an administrator, but not discharging him from his trust, is not a final judgment, within the meaning of section 939 of the Code of Civil Procedure, although made in the form of findings and decree; but such order is appealable, and brings up for review all the proceedings leading to it, and the evidence upon which it was based, though the appeal be not taken within sixty days after the signing and filing of the findings and decree.

Id. — Administrator's Account — Conduct of Business by Administrator — Probate Jurisdiction. — When an administrator carries on the business of the deceased, he does so at his own risk, and though he must account for all profits received, he must bear all losses resulting from failure, and liabilities growing out of his management are not claims which can be enforced against the estate, though he may pay them out of the increase of the business, if not resulting in loss to the estate. They are not charges or expenses of administration, nor are the items of increase and items of expense of such business within the purview of the itemized account regulated by sections 1631 and 1632 of the Code of Civil Procedure, but they should be reported separately to the court, if reported at all. They may be investigated in a civil action, if the administrator is guilty of fraud, but they should not be audited in the administrator's account, as part of the probate jurisdiction of the court. But if the probate court debits the administrator in his account with the gross receipts of the business carried on by him, he should also be credited with its expenses.

Id. — Expenses of Administration — Appraisers' Fees — Traveling Expenses — Counsel Fees — Removal of Guardian. — The administrator should be allowed the amount paid to the appraisers, and all necessary traveling expenses when on the business of the estate. An item of traveling expenses should not be rejected *in toto* because the account does not disclose for what the expense was incurred, but it should be retired from the list of items, with leave to bring it forward with proper proofs in a future account. The administrator should also be allowed for the services and traveling expenses of his attorney, not exceeding a reasonable compensation for the labor actually performed, when the same are necessary to properly perform the duties of his trust, and are incurred in good faith, in litigation carried on under the advice of counsel, or for services in the settlement of the estate; but should not be allowed for counsel fees or expenses incurred in a matter with

which he, as administrator, had nothing to do, such as procuring the removal of a guardian of minor heirs.

ID. — ADVANCES OF ADMINISTRATOR FOR MINOR HEIRS — DISTRIBUTION. — If the administrator has advanced moneys for the benefit of the estate of minor heirs, he may be allowed credit therefor on account of their distributive shares upon final settlement, but cannot charge such advances as expenses of administration.

ID. — COMMISSIONS OF ADMINISTRATOR. — An administrator is not entitled to be credited with his commissions until the settlement of his final account.

APPEAL — REVIEW OF EVIDENCE. — If there is any evidence to sustain the findings of the superior court, they will not be disturbed upon appeal, without regard to whether the appellate court would have found the same way upon the evidence.

APPEAL from an order of the Superior Court of Tulare County settling the account of an administrator.

The facts are stated in the opinion of the court.

*Wal J. Tuska,* and *W. W. Foote,* for Appellant.

*Stetson & Houghton,* and *R. E. Houghton,* for Respondent.

Fox, J.—This is an appeal by the administrator from an order settling his account. The account was filed October 19, 1885. To this the guardian of minor heirs filed certain exceptions and objections, and on the 24th and 25th of November, 1885, a hearing was had. The bill of exceptions, bringing up the evidence and proceedings had on that hearing, covers 1146 folios of the original transcript, and additional exhibits therein referred to about 180 folios, found in a supplemental transcript. On the 12th of July, 1886, the judge signed and filed a written opinion announcing his conclusions therein, directing that the account be settled in accordance therewith, "and if counsel on either side deem further papers necessary, let the papers be draughted settling the account as above indicated." Counsel for one or both the parties (manifestly for the contestants) evidently did deem further papers necessary, for on the 12th of March, 1887,

a paper relating to such settlement, indorsed "Findings and decree," was signed by the judge, and filed, and on the 10th of June, 1887, the same was "recorded in Book 2, Probate Decrees, on pp. 1 et seq." From this "order and decree" the administrator appealed June 29, 1887. The proposed bill of exceptions was prepared and served on the thirteenth day of May, 1887, and is certified by the judge to have been "within the time allowed by law and the order of court and the stipulation of counsel." On the 18th of June, 1887, contestant's proposed amendments to said bill of exceptions were prepared and served, also certified by the judge to have been "within the time allowed by law and the order of court and the stipulation of counsel." Bill of exceptions finally settled and certified September 3, 1887.

The respondent contends that the question of the sufficiency of the evidence to sustain the findings cannot be considered on this appeal. This contention is based upon the provision of subdivision 1, section 939, Code of Civil Procedure, relating to appeals in general, where it is provided: "An appeal may be taken,—1. From a final judgment in an action or special proceeding commenced in the court in which the same is rendered, within one year after the entry of the judgment. But an exception to the decision or verdict, on the ground that it is not supported by the evidence, cannot be reviewed on an appeal from the judgment, unless the appeal is taken within sixty days after the rendition of the judgment."

This appeal was taken within sixty days after the recording of the so-called "findings and decree" in the "Book of Probate Decrees," which must be taken as the date of the "entry of the judgment," if it be a judgment within the meaning of the section quoted. (*McLaughlin* v. *Doherty*, 54 Cal. 519; *Thomas* v. *Anderson*, 55 Cal. 43; *Lorenz* v. *Jacobs*, 53 Cal. 24; *Miller* v. *Sharpe*, 54 Cal. 590; *Estate of Rose*, 72 Cal. 578.) But it was not taken within

sixty days after the signing and filing of said "findings and decree," which must be taken as the date of the "*rendition* of the judgment," if judgment it be. (*Gray* v. *Palmer*, 28 Cal. 416; *Peck* v. *Courtis*, 31 Cal. 207; *Genella* v. *Relyea*, 32 Cal. 159; *Wetherbee* v. *Dunn*, 36 Cal. 252; 95 Am. Dec. 166; *McCourtney* v. *Fortune*, 42 Cal. 389; *McLaughlin* v. *Doherty*, 54 Cal. 519.)

Upon the first submission of this appeal the court was inclined to the opinion as contended for by respondent; but upon rehearing and further consideration of the question, the majority of the court have reached the conclusion that the so-called "findings and decree," constituting the decision from which this appeal is taken, do not constitute a judgment, or a "final judgment," within the meaning of the provisions of section 939 of the Code of Civil Procedure. If it is not a "final judgment," then it is (something less) a mere order.

The learned counsel for respondent evidently did not think that an order settling the account of an administrator was a "judgment," within the meaning of section 939, until this appeal was taken; for the very account for the settlement of which this order was made was one rendered and filed upon an order of the court dated September 8, 1885, made upon his own motion, requiring the administrator to restate in detail his entire account from the commencement of his administration to date, notwithstanding the fact that before that time the great bulk of the same account had been presented and filed, contested by the same parties and before the same judge, and by him settled in an elaborately written review and order made and filed August 22, 1885, which order has never been formally vacated or set aside.

But whatever may be the contention of counsel, we think the question is settled by the codes and the former adjudication of this court.

"A judgment is the final determination of the rights of the parties in an action or proceeding." (Code Civ.

Proc., sec. 577.)    The proceeding appealed from is not a "final determination of the rights of the parties in an [the] action or proceeding."    At most it is but a settle-- ment of one of many matters arising in a probate pro- ceeding, preparatory to a "final settlement of the rights of the parties" in the whole proceeding.    In this particular case the paper upon its face shows that it is not even a settlement of the particular matter under consideration, for by its very terms, at folio 285, the sum of more than $1,200, claimed to have been paid out by the adminis- trator, is left unsettled and undetermined, the subject of further consideration in any new account which he may present.

"Every direction of a court or judge made in writing, and not included in a judgment, is denominated an order."    (Code Civ. Proc., sec. 1003.)    An order, as dis- tinguished from a final judgment, is the judgment or conclusion of the court upon any motion or proceeding. (*Gilman* v. *Contra Costa Co.*, 8 Cal. 57.)    This is an appealable order, under subdivision 3, section 963 of the Code of Civil Procedure.    (*Dean* v. *Superior Court*, 63 Cal. 477.)    It is not an order which discharges the ad- ministrator from his trust.    (*McCrea* v. *Haraszthy*, 51 Cal. 147.)    It is one which may be reopened (Code Civ. Proc., sec. 1637; *Estate of Runyon*, 53 Cal. 196), or vacated or set aside, and if so done, the latter order is not ap- pealable.    (*Estate of Dunne*, 53 Cal. 631.)    It is not, therefore, a final judgment.

We hold, therefore, that upon appeal from an order settling an administrator's account, all the proceedings leading up to it, including the evidence upon which it is based, are open to review.

A former appeal from this same order was brought to this court and dismissed on motion of respondent, on the ground, among others, that the appeal was prema- turely taken.    That appeal was taken on the 27th of April, 1887, after the signing and filing of the "findings

and decree," and before the same was recorded. On authorities then cited, the court held that the appeal was prematurely taken, and the same was dismissed. (*Estate of Rose*, 72 Cal. 577.) Respondent now moves to dismiss on the ground, among others, that the dismissal of the former appeal is a bar to this one. The bar of section 955 of the Code of Civil Procedure will apply where the dismissal is for want of prosecution (unless it be expressly made "without prejudice"), or where it is on the merits; but an appeal dismissed because there was nothing to appeal from will not preclude another appeal in the same case, when a record shall have been made up from which an appeal can be taken. Preferring, if possible, to dispose of the case upon its merits, in such form that the estate may be speedily closed, without considering the other grounds upon which it is made, the motion to dismiss the appeal is denied.

And looking into the merits of the case, we find from the record that Allan E. Rose died intestate, in Kern County, on the 5th of October, 1880, leaving three minor children, and an estate which, in December, 1880, inventoried and appraised at $6,066. This amount was increased by a supplemental inventory and appraisement, filed in September, 1881, amounting to $430, making the total estate $6,496, of which $1,555 was real property, all the balance being personal property. At the time of his death, Rose was engaged in the cattle, sheep, and dairy business, and was heavily indebted. On the 18th of October, 1880, letters of administration upon his estate were granted to Herman Hirshfeld, appellant, by the superior court of Kern County. On April 20, 1885, the matter of said estate was transferred for further proceedings to Tulare County, a new judge having taken the bench in Kern County, who was disqualified to sit in the case. Claims against said estate were in due course presented and allowed to the amount of $4,805.77. On the 12th of December, 1880, the administrator made

and filed his petition in due form, estimating the debts and expenses of administration, accrued and to accrue, at $6,000, and showing that the entire personal estate would be insufficient to pay this amount, and praying for an order of sale of the personal property, and of so much of the real property as should be necessary to raise the amount so estimated to be necessary to pay debts and expenses. This was followed by an order of January 10, 1881, under proceedings which appear to have been regular, authorizing the sale of all the real and personal property of the estate at private sale.

It would seem that from the very first the administrator, instead of simply gathering up and taking care of the property of the estate, and in due course converting it into money under proper orders of the court, and out of the proceeds paying expenses of administration and family allowance, applying the balance to the payment of debts, so far as it would go, as he might have done in strict performance of his duty, commenced and continued to carry on the business in which the decedent had been engaged, accounting for the increase of stock and income thereof, and paying the expenses of the conduct of the business out of the same. Whether he has correctly accounted for the increase and income, and correctly reported the expenses, is the principal subject of the investigation, from the result of which this appeal is taken. It has evidently been the source of all his trouble and litigation as such administrator. The business was a hazardous one for an administrator to undertake, and one which the law did not require at his hands. (*Brenham* v. *Story*, 39 Cal. 188.) If it resulted in profit, that profit belonged to the estate, and not to himself. It being a business which he was neither required nor authorized by law to conduct on behalf of the estate, if he did do it, with the property and funds of the estate, and there was loss, the loss was his. Whenever an administrator undertakes to go beyond the strict line of

his duty, he acts upon his own responsibility. He can derive no profit from the success of his venture, but must bear the loss of a failure. (*Estate of Knight,* 12 Cal. 200; 73 Am. Dec. 531.) If he uses the real estate of the estate, he must account for the rental value thereof, and if he makes a profit, account to the estate for that also. (*Walls* v. *Walker,* 39 Cal. 424; 99 Am. Dec. 290. To the same effect is *Tompkins* v. *Weeks,* 26 Cal. 51.) If, as in this case, the administrator elects to assume the peril, and is permitted by the court and parties interested, without objection, to so conduct and manage the business, the liabilities growing out of the management are not claims which could be enforced against the estate by the holders thereof. They are his liabilities. He has a right to pay them out of the increase of the business, but if by so doing a loss is sustained to the estate, he must make the loss good. Protected from loss and from liability at all times, the estate is interested in the business only to the extent of its profits; and in them, not because it is the business of the estate, but because the administrator is using the property of the estate in a way he is not authorized to do, and consequently, is required to account for all the profit made by its use.

It follows from this that the expenses incurred in carrying on such business are not debts of or claims against the estate, nor are they "charges or expenses of administration," within the meaning of the probate law. The items of increase and items of expense of such business are not matters which come within the purview of the itemized account of an administrator, as such, subject to the rules of audit and allowance prescribed in sections 1631 and 1632 of the Code of Civil Procedure. He is bound to report to the court, as money or property coming into his hands as administrator, the true net gains or profits derived from the business in money or kind, but the detailed account of the management or conduct of the business is no part of his accounts as adminis-

trator. If he reports them to the court at all, it should be done in a separate paper, perhaps as an exhibit attached to his official report or account. And when so done, it simply serves the purpose of showing his good faith in the premises, and is not a matter for audit by the court. The probate jurisdiction of the court is separate and distinct from its jurisdiction in ordinary civil actions. (*In re Allgier*, 65 Cal. 228; *Richard* v. *Wetmore*, 66 Cal. 365.) To the extent that the court, in the exercise of its probate jurisdiction, undertakes to audit the accounts and control the conduct of that business, to that extent it also, as well as the administrator, assumes to make a speculative and hazardous use of the property of the estates of deceased persons not authorized by law. If the administrator fails to honestly account to the estate for the profits, or to make good the loss of his acts *ultra vires*, he is guilty of a fraud, for which he may be proceeded against in a civil action as in any other case of fraud, and then, and in that proceeding, those accounts of the business which he conducted, with the property of the estate, without authority of law, will become the subject of investigation, item by item, and their investigation will be governed by the same rules of evidence as apply in the examination of other disputed accounts.

Applying these principles, we proceed to a further examination of the record. It further appears that on the 9th of December, 1881, less than fourteen months after his appointment, the administrator filed his first and what was intended to be his final account, showing that he had received in cash $10,942.43 and paid out $9,145.92, leaving a balance in his hands of $1,796.51. From this account, and the report of sales of personal property filed twenty days later, it appears that of the receipts, $5,807.08 was derived from the sale of personal property, the balance, $5,135.35, being the *gross* income derived from the business as carried on by him.

His account of expenditure included the payment in full of all the claims which had been presented and allowed against the estate ($4,805.77), the payment of all the charges and expenses of administration and of taxes, and the balance, comprising the majority in number of the several items, although placed regularly in the account of expenditures of administration, show upon their face that they were expenses of carrying on the business, from which the increase of $5,135.35 was derived. We have taken some pains to segregate these items from the other, and find that they amount to $3,174.63, showing that he gives the estate the benefit of a net gain growing out of the business up to that time of $1,960.72.

The record also shows that on the 23d of December, 1881, the attorney of the minor heirs filed objections to this account, contesting it on the ground, among others, "that no sufficient vouchers for the expenses and charges of said estate have been filed by the administrator of above estate." We do not find that the present record shows the next succeeding history of this account, but counsel for respondent says in his brief that it was settled and allowed as filed by the superior court of Kern County on the 29th of December, 1881, from which order an appeal was taken to this court, the decision upon which will be found in 63 Cal. 349. Turning to the case as there reported, we find that the mass of items of which we have above spoken as constituting payments of expenses of the business conducted by the administrator were treated by both sides as expenses and charges of administration, and the distinction was not in any manner called to the attention of the court. As many of those items were unaccompanied by the kind of vouchers required for payments made on account of "charges and expenses of administration," the order settling and allowing the account

was reversed, and the cause remanded for further proceedings.

On the 17th of September, 1883, the account came on again for settlement in the superior court of Kern County, when the present contestant filed objections to the same. The court refused to hear the contestant, on the ground that he had no standing in court. Contestant appealed. The decision on that appeal will be found in 66 Cal. 242. It will be seen that there the court does not discuss or pass upon the merits of the account at all; but holds that the court erred in refusing to give the contestant a hearing, and reversed the case.

After the *remittitur* went down the case was transferred to Tulare County, as above stated. There the same account and objection came up for hearing April 20–23, 1885. On that hearing the court, in a written decision filed August 22, 1885, held, as we hold here, that "it is no part of the duty of an administrator to carry on any business for the benefit of an estate. If he does so, he is liable for any loss that may be incurred, and can reap no benefit from the profits, if any. . . . . That where an administrator elects to carry on a business for an estate, the person who is employed by him in such business is the employee of such administrator, and not the employee of such estate; such employee must look to the administrator, and not to the estate, for his pay. The amount due such employee is not a 'charge,' 'debt,' or 'claim' on his behalf against said estate." But on the other hand, and it seems to us inconsistently with this, the court holds that if the business pay a revenue to the estate, then the expenses of the business are items of expense under section 1631 of the Code of Civil Procedure, for which formal vouchers must be filed under section 1632. If it is not the business of the estate, why is the expense of it expense of the estate? Why either more or less expense of the estate if it results in revenue than if it results in loss?

Acting upon the principles thus announced by the court, it takes up the account item by item, and disallows or retires from the expense account, for want of proper vouchers, with leave to bring them forward again in any further account, items aggregating about $850, and surcharges the administrator with about $150, making a difference against the administrator of about $1,000. Of this the appellant does not seem to have complained; but on the 8th of September following, the court, "upon the suggestion" of the respondent, made an order requiring the administrator within thirty days to restate his account in full from the commencement of his administration to date.

In pursuance of that order, on the 19th of October, 1885, the restated account was filed. On the 24th of November, 1885, exceptions to the account, covering forty-six folios of the record, were filed, contesting the account, not only for want of proper vouchers for many of the items thereof, but also upon many other grounds, and notably upon the ground that the administrator had not truly or correctly reported all the moneys received by him, and never reported or filed an inventory of all the property of the estate which had come into his hands.

Upon the same and the next succeeding day (November 24 and 25, 1885) a hearing was had upon the restated account, and the issue raised, or assumed to be raised, by these exceptions; and on March 12, 1887, the "findings and decree" were filed, from which, after the document was recorded, this appeal was taken.

The case has been here in different forms many times; and the close of administration delayed beyond all precedent, considering the small estate to be disposed of, and it is desirable that it should be closed at the earliest possible moment. For this reason, we have reviewed it at greater length than we otherwise would have done.

Looking at the case upon the issues presented by the account and the objections thereto, and as disclosed by

the bill of exceptions, we find that in settling the account the court has finally rejected and disallowed items amounting to $154.06, and retired for further consideration, upon the coming in of another account, two items, amounting to $357,— all of that class which are expenses of carrying on the business, as distinguished from "charges and expenses of administration." As the appellant claims to have debited himself, and the court debits him, with the gross gains of that business, we think that, under the evidence and the principles here adopted, he should be credited with those items, and the court below is directed accordingly.

The court also rejected an item of fifteen dollars paid to Noble as appraiser. The record shows that Noble was duly appointed one of the appraisers, served as such three days, and claimed the fee. The administrator swears that he paid it, and we find no contradiction of that evidence. The amount is under twenty dollars, and we think should be allowed.

The court also rejects an item of seventy-five dollars, expense of administrator to San Francisco. It does not very clearly appear from the record for what this expense was incurred; but the administrator is entitled to necessary traveling expenses when on business of the estate. If this expense is claimed to have been of that class, the bill should not be rejected *in toto*, but be placed in the list of those items retired, with leave to bring it forward with the proper proofs in a future account.

The court allows $756 and rejects $540 paid by the administrator to his counsel for fees and professional services, and also rejects $251 traveling expenses of his counsel. This rejection is based upon the proposition that much of the service rendered was unnecessary, not in the interest of the estate, to delay settlement, and was with a view to establish an account in which the administrator had knowingly not charged himself with all moneys and property of the estate which came into his

hands. The findings do not show to what particular service the rejected items apply, and we cannot, therefore, say whether the rejection was correct or not. But if any part of it applies to the defense of the two appeals decided in 63 Cal. 346, 349, to that extent we think the rejection was error. An administrator is entitled to credit for payments made for the services and traveling expenses of his attorney, not exceeding a reasonable compensation for the labor actually performed, when the same were necessary to enable him to properly perform the duties of his trust. (*Estate of Moore*, 72 Cal. 386.) He was not at that time charged with having failed to account for all the property, and was simply in the one case insisting upon the allowance of his account for carrying on the business, and in the other he had acted under order of the court below, and was defending an appeal from such order. He acted under the advice of counsel, and we see nothing to show that such advice was not in good faith. He was not responsible for the mistakes of either counsel or court; and for the reasonable expenses incurred in that behalf, as well as for services in other proceedings in the settlement of the estate, we think he should be allowed. If any portion of these rejected items was for services in either this court or the court below, in the matter of procuring the removal of the guardian of the minor heirs, for that portion he is clearly not entitled to be allowed. It was a matter with which he, as administrator, had nothing to do, and no part of the expense of it should be charged to this estate.

Several items of clerk's fees, printing bills, and of moneys paid to the attorneys for the minor heirs were rejected. All the items of expenditures made in the matter of the estate and guardianship of these minors are properly rejected from this account. These expenses have no place in this account. If upon settlement between the two estates and distribution of this estate it

be found that the administrator has made advances to the other estate by paying, at the request of its representative, proper and necessary expenses therein, he may properly be allowed credit therefor as so much advanced to the minors on account of their distributive share, but he is not entitled to charge such advancement as expenses of this administration.

The retiring of the item for administrator's commissions was proper, as he is not entitled to these commissions until the settlement of his final account.

We are not disposed, under the evidence, to interfere with the action of the court in rejecting or retiring other items of this account, considered in findings 38 to 62, inclusive.

Turning to the other side of the account, the appellant claims that there is absolutely no proof to sustain the findings of the court. In this we think he is mistaken. It is not a question whether this court would have found the same way on the same evidence, but (there being no conflict) whether there is any evidence to justify the findings. If there is, under the well-established rule of this court the findings cannot be disturbed. It is not necessary that the evidence should be introduced by the contestant if it is clearly found in the testimony of those called to support the account.

It seems to us that there is in that testimony some evidence to support every finding and order of the court surcharging the administrator with amounts omitted from the debit side of that account, and as to many of the charges it is conclusive evidence. The findings and conclusions 19 to 36, inclusive, will not be disturbed.

The finding that no order was ever made by any court or judge thereof authorizing the sale of personal property belonging to said estate, made by said administrator in the year 1881, is in conflict with the record as produced in this court, and is erroneous.

The findings of misappropriation or misuse of funds,

of failure to report all the funds received, of failure to file an inventory of all the personal property of the estate, of careless loss of books, and generally the findings not herein specifically noticed, seem to be justified by the evidence, and will not be disturbed.

The order appealed from is reversed, with instructions to the court below to allow in the account of the administrator the claim of fifteen dollars paid Noble for appraisers' fees, and all the items which the evidence shows to have been expenses of carrying on the business, as defined in the foregoing opinion, except such as are duplicated or withdrawn; also, that the administrator be allowed to introduce any additional evidence he may have in support of any of the remaining items which have been rejected or retired from his account, and thereupon that the account be restated in accordance with this opinion.

SHARPSTEIN, J., McFARLAND, J., and THORNTON, J., concurred.

WORKS, J., concurred in the judgment of reversal.

Rehearing denied.